# U.S. Bankruptcy Court

## Eastern District of Pennsylvania

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 5/11/2023 at 3:44 PM EST

[File another claim](#)

| | |
|---|---|
| **Case Name:** | Cory Nathaniel Lewis |
| **Case Number:** | [23-10629-mdc](#) |
| **Creditor Name:** | MidFirst Bank |
| | 999 NorthWest Grand Boulevard |
| | Oklahoma City, OK 73118 |
| **Claim Number:** | [11](#)  [Claims Register](#) |

**Amount Claimed:** $310,681.04

**Amount Secured:** $310681.04

**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Client approved POC- Lewis.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/11/2023] [FileNumber=31296986-0] [24cf2a883451d72ced086ebaaf3f39f7847257fd542dbde210e7926e8ffd630bcf d1ecc8902569d4343d25a7c65b460b9c9dd1eedd9df8b9e00414f1547b6ae0]]
**Document description:** Exhibit Certificate of Service
**Original filename:** C:\fakepath\COS- Lewis.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/11/2023] [FileNumber=31296986-1] [4f3c768ee2676daf5ec0a20a72f9b13e8d39f1f3976872234972deb7e15350967e 5da45bfbbb0ace40785ee228f02e53aee927dbf74609876111dfefeb9aef92]]
**Document description:** Exhibit 410a Payment History
**Original filename:** C:\fakepath\410a- Lewis.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/11/2023] [FileNumber=31296986-2] [ae8881a5ff6157fc73d79e1ca66d22b939d422a155db840a004a5254c33da02388 d618779e47ed28ed15f1fc624a7a113167013d08d0800112969464b7ab46fe]]
**Document description:** Exhibit Escrow Analysis

**Original filename:**C:\fakepath\EA- Lewis.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/11/2023] [FileNumber=31296986-3] [1fa5d130c50238841c8918a819a794edc96ab73defba260f3baa231e68c0f619e0 38f152b74a70badb6c119ea30a5343cda74d14da94b61eecd27c6b610a830b]]
**Document description:**Exhibit Loan Documents
**Original filename:**C:\fakepath\Loan Documents- Lewis.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/11/2023] [FileNumber=31296986-4] [141cde2da792aca753cf36a00c893fde5ec3b444f82fb1df17ab300dbd25b61031 83e2acf211344e93974ba606f9b30dc72b9a6acdb421ce44e16b695c7abba5]]

## 23-10629-mdc Notice will be electronically mailed to:

MICHAEL A. CIBIK on behalf of Debtor Cory Nathaniel Lewis
mail@cibiklaw.com, cibiklawpc@jubileebk.net;ecf@casedriver.com

MICHAEL PATRICK FARRINGTON on behalf of Creditor MIDFIRST BANK
mfarrington@kmllawgroup.com

WILLIAM CARL KATZ on behalf of Creditor Daniel Pommells
WKatz@sanddlawyers.com, mhanford@sanddlawyers.com;rchew@sanddlawyers.com;kdaley@sanddlawyers.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

KENNETH E. WEST on behalf of Trustee KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

## 23-10629-mdc Notice will not be electronically mailed to:

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

**Fill in this information to identify the case:**

Debtor 1    Cory Nathaniel Lewis
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number  23-10629 MDC

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | **MIDFIRST BANK** <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☐ No <br> ☒ Yes.  From whom? _____ Nationstar Mortgage LLC _____ |
| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**     **Where should payments to the creditor be sent? (if different)** <br><br> **MidFirst Bank**                  Name <br> Name <br><br> **999 NorthWest Grand Boulevard**    Number    Street <br> Number    Street <br><br> **Oklahoma City, OK 73118**       City   State   Zip Code <br> City   State   Zip Code <br><br> **1-800-654-4566**             Contact phone <br> Contact phone <br><br> Contact Email                 Contact Email <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br> _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ |
| 4. Does this claim amend one already filed? | ☒ No <br> ☐ Yes.  Claim number on court claims registry (if known)_____    Filed on _____ <br>                                                 MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No <br> ☐ Yes.  Who made the earlier filing? _____ |

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    **6704** |

| | |
|---|---|
| 7. **How much is this claim?** | $310,681.04    **Does this amount include interest or other charges?**<br><br>☐ No<br>☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A). |

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. **Is all or part of the claim secured?**

☐ No
☒ Yes.  The claim is secured by a lien on property.
Nature of property: **1211 Greenwood Avenue Wyncote, PA 19095**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:   **Deed of Trust, Mortgage, Note**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                 $_____

Amount of the claim that is secured:   **$310,681.04**

Amount of the claim that is unsecured:  $_____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: **$14,065.70**

Annual Interest Rate (when case was filed)  **3.1250%**

☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.       $_____

11. **Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).     $_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).     $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).     $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).     $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies.     $_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:**  **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/10/2023
                   MM / DD / YYYY

*Holly Allegre*
(Signature)

**Print the name of the person who is completing and signing this claim:**

Name        Holly Allegre
            First name          Middle name          Last name

Title       Vice President

Company     MidFirst Bank
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     999 NW Grand Blvd.
            Number      Street
            Oklahoma City                    OK      73118
            City                             State   ZIP Code

Contact phone   1-800-654-4566          Email _____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Cory Nathaniel Lewis | CHAPTER 13 |
| Debtor(s) | NO. 23-10629 MDC |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for MIDFIRST BANK do hereby certify that true and correct copies of

the foregoing Proof of Claim have been served May 11, 2023, by electronic filing upon those listed below:

Attorney for Debtor(s)
MICHAEL A. CIBIK
Cibik Law, P.C.
1500 Walnut Street, Suite 900
Philadelphia, PA 19102

**Bankruptcy Trustee**
Kenneth E. West
Office of the Chapter 13 Standing Trustee (VIA ECF)
1234 Market Street - Suite 1813
Philadelphia, PA 19107

Date: May 11, 2023

/s/ **Brian C. Nicholas**
Brian C. Nicholas
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
412-430-3594
bnicholas@kmllawgroup.com

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number | 23-10629-13 | Principal Balance: | 306,309.21 | Principal & Interest Due: | 6,663.50 | Principal & Interest: | 1,332.70 |
| Debtor 1 | CORY NATHANIEL LEWIS | Interest Due: | 4,012.44 | Prepetition Fees Due: | 156.60 | Monthly Escrow: | 1,024.00 |
| Debtor 2 | | Fees, Costs Due: | 156.60 | Escrow Deficiency for Funds Advanced: | 309.39 | Private Mortgage Insurance: | 207.81 |
| Last 4 Digits to Identify | xxxx6704 | Escrow Deficiency for Funds Advanced: | 309.39 | Projected Escrow Shortage: | 7,042.81 | Total Monthly Payment: | 2,564.51 |
| Creditor | MidFirst Bank | Less Total Funds On Hand: | 106.60 | Less Funds On Hand: | 106.60 | | |
| Servicer | MidFirst Bank | Deferred Balance: | 0.00 | | | Next Due Date: | 4/1/2023 |
| Fixed Accrual/Daily | | Total Debt: | 310,681.04 | Total Prepetition Arrearage: | 14,065.70 | | |
| Simple Interest/Other | Fixed | | | | | | |

| Part 5: Loan Payment History from First Date of Default | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | | |
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & Esc Past Due Balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied Funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/ Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/2019 | 2755.58 | | | Contractual Payment Due | 10/1/2019 | 2755.58 | | | | | | 312522.41 | | 2010.08 | 0.00 | 0.00 |
| 10/15/2019 | | | | Payments Posting | *10/01/2019 | 0.00 | 351.63 | 1432.39 | 971.56 | | | 312170.78 | | 2981.64 | 0.00 | 0.00 |
| 10/21/2019 | | | | Payments Posting | *11/01/2019 | -2755.58 | 353.24 | 1430.78 | 971.56 | | | 311817.54 | | 3953.20 | 0.00 | 0.00 |
| 10/30/2019 | | | | Payment Reversal | 10/1/2019 | 0.00 | -353.24 | -1430.78 | -971.56 | | | 312170.78 | | 2981.64 | 0.00 | 0.00 |
| 10/30/2019 | | | 15.00 | Billed - Nsf Fee | | 0.00 | | | | 15.00 | | 312170.78 | | 2981.64 | 15.00 | 0.00 |
| 10/30/2019 | | | | Escrow Refund | | 0.00 | | | -707.48 | | | 312170.78 | | 2274.16 | 15.00 | 0.00 |
| 10/30/2019 | | | | MIP Paid | | 0.00 | | | -217.40 | | | 312170.78 | | 2056.76 | 15.00 | 0.00 |
| 11/1/2019 | 2755.58 | | | Contractual Payment Due | 11/1/2019 | 2755.58 | | | | | | 312170.78 | | 2056.76 | 15.00 | 0.00 |
| 11/18/2019 | | | | Payments Posting | *11/01/2019 | 0.00 | 353.24 | 1430.78 | 971.56 | | | 311817.54 | | 3028.32 | 15.00 | 0.00 |
| 11/18/2019 | | | -15.00 | Fees Paid | | 0.00 | | | | -15.00 | | 311817.54 | | 3028.32 | 0.00 | 0.00 |
| 11/25/2019 | | | | MIP Paid | | 0.00 | | | -217.40 | | | 311817.54 | | 2810.92 | 0.00 | 0.00 |
| 11/26/2019 | | | | Payment Reversal | 10/1/2019 | 2755.58 | -353.24 | -1430.78 | -971.56 | | | 312170.78 | | 1839.36 | 0.00 | 0.00 |
| 11/26/2019 | | | 15.00 | Fee Reversal | | 2755.58 | | | | 15.00 | | 312170.78 | | 1839.36 | 15.00 | 0.00 |
| 11/26/2019 | | | 15.00 | Billed - Nsf Fee | | 2755.58 | | | | 15.00 | | 312170.78 | | 1839.36 | 30.00 | 0.00 |
| 11/26/2019 | | | 71.36 | Late Fees | | 2755.58 | | | | 71.36 | | 312170.78 | | 1839.36 | 101.36 | 0.00 |
| 12/1/2019 | 2758.50 | | | Contractual Payment Due | 12/1/2019 | 5514.08 | | | | | | 312170.78 | | 1839.36 | 101.36 | 0.00 |
| 12/16/2019 | | | 71.36 | Late Fees | | 5514.08 | | | | 71.36 | | 312170.78 | | 1839.36 | 172.72 | 0.00 |
| 12/20/2019 | | | | MIP Paid | | 5514.08 | | | -217.40 | | | 312170.78 | | 1621.96 | 172.72 | 0.00 |
| 12/26/2019 | | | 20.00 | Billed - Inspection Fee | | 5514.08 | | | | 20.00 | | 312170.78 | | 1621.96 | 192.72 | 0.00 |
| 1/1/2020 | 2758.50 | | | Contractual Payment Due | 1/1/2020 | 8272.58 | | | | | | 312170.78 | | 1621.96 | 192.72 | 0.00 |
| 1/6/2020 | | | | Payments Posting | *11/01/2019 | 5517.00 | 353.24 | 1430.78 | 971.56 | | | 311817.54 | | 2593.52 | 192.72 | 0.00 |
| 1/6/2020 | | | | Payments Posting | *12/01/2019 | 2858.50 | 354.86 | 1429.16 | 874.48 | | | 311462.68 | | 3468.00 | 192.72 | 0.00 |
| 1/6/2020 | | | | Suspense Transaction | | 2858.50 | | | | | 97.08 | 311462.68 | | 3468.00 | 192.72 | 97.08 |
| 1/6/2020 | | | 19.00 | Billed - E Pay Fee | | 2858.50 | | | | 19.00 | | 311462.68 | | 3468.00 | 211.72 | 97.08 |
| 1/6/2020 | | | -19.00 | Paid - E Pay Fee | | 2858.50 | | | | -19.00 | | 311462.68 | | 3468.00 | 192.72 | 97.08 |
| 1/8/2020 | | | | Suspense Transaction | | 2858.50 | | | | | 2934.14 | 311462.68 | | 3468.00 | 192.72 | 3031.22 |
| 1/8/2020 | | | | Payments Posting | *1/01/2020 | 100.00 | 356.48 | 1427.54 | 974.48 | | -2758.50 | 311106.20 | | 4442.48 | 192.72 | 272.72 |
| 1/8/2020 | | | | Escrow Transaction | | 100.00 | | | 80.00 | | -80.00 | 311106.20 | | 4522.48 | 192.72 | 192.72 |
| 1/8/2020 | | | -20.00 | Fees Paid | | 100.00 | | | | -20.00 | -20.00 | 311106.20 | | 4522.48 | 172.72 | 172.72 |
| 1/8/2020 | | | -30.00 | Fees Paid | | 100.00 | | | | -30.00 | -30.00 | 311106.20 | | 4522.48 | 142.72 | 142.72 |
| 1/8/2020 | | | -142.72 | Fees Paid | | 100.00 | | | | -142.72 | -142.72 | 311106.20 | | 4522.48 | 0.00 | 0.00 |
| 1/15/2020 | | | | Escrow Transaction | | 100.00 | | | -80.00 | | 80.00 | 311106.20 | | 4442.48 | 0.00 | 80.00 |
| 1/15/2020 | | | | Payment Reversal | 12/1/2019 | 2858.50 | -356.48 | -1427.54 | -974.48 | | | 311462.68 | | 3468.00 | 0.00 | 2838.50 |
| 1/15/2020 | | | | Payment Reversal | 11/1/2019 | 5517.00 | -354.86 | -1429.16 | -874.48 | | | 311817.54 | | 2593.52 | 0.00 | 5497.00 |
| 1/15/2020 | | | | Payment Reversal | 10/1/2019 | 8272.58 | -353.24 | -1430.78 | -971.56 | | | 312170.78 | | 1621.96 | 0.00 | 8252.58 |
| 1/15/2020 | | | 19.00 | Fee Reversal | | 8272.58 | | | | 19.00 | | 312170.78 | | 1621.96 | 19.00 | 8271.58 |
| 1/15/2020 | | | 20.00 | Fee Reversal | | 8272.58 | | | | 20.00 | | 312170.78 | | 1621.96 | 39.00 | 8291.58 |
| 1/15/2020 | | | 142.72 | Late Fees | | 8272.58 | | | | 142.72 | | 312170.78 | | 1621.96 | 181.72 | 8434.30 |
| 1/15/2020 | | | 30.00 | Fee Reversal | | 8272.58 | | | | 30.00 | | 312170.78 | | 1621.96 | 211.72 | 8464.30 |
| 1/15/2020 | | | | Payment Reversal | | 8272.58 | | | | | -5530.16 | 312170.78 | | 1621.96 | 211.72 | 2934.14 |
| 1/15/2020 | | | 15.00 | Billed - Nsf Fee | | 8272.58 | | | | 15.00 | | 312170.78 | | 1621.96 | 226.72 | 2934.14 |
| 1/15/2020 | | | | Payments Posting | *11/01/2019 | 5517.00 | 353.24 | 1430.78 | 971.56 | | -2755.58 | 311817.54 | | 2593.52 | 226.72 | 178.56 |
| 1/15/2020 | | | | Escrow Transaction | | 5517.00 | | | 80.00 | | -80.00 | 311817.54 | | 2673.52 | 226.72 | 98.56 |
| 1/16/2020 | | | 71.36 | Fees Billed | | 5517.00 | | | | 71.36 | | 311817.54 | | 2673.52 | 298.08 | 98.56 |
| 1/29/2020 | | | | MIP Paid | | 5517.00 | | | -217.40 | | | 311817.54 | | 2456.12 | 298.08 | 98.56 |
| 2/26/2020 | | | | MIP Paid | | 5517.00 | | | -217.40 | | | 311817.54 | | 2238.72 | 298.08 | 98.56 |
| 3/5/2020 | | | | Suspense Transaction | | 5517.00 | | | | | 5490.81 | 311817.54 | | 2238.72 | 298.08 | 5589.37 |
| 3/5/2020 | | | | Payments Posting | *12/01/2019 | 2758.50 | 354.86 | 1429.16 | 974.48 | | -2758.50 | 311462.68 | | 3213.20 | 298.08 | 2830.87 |
| 3/5/2020 | | | | Payments Posting | *1/01/2020 | 0.00 | 356.48 | 1427.54 | 974.48 | | -2758.50 | 311106.20 | | 4187.68 | 298.08 | 72.37 |
| 3/16/2020 | | | | Payment Reversal | 12/1/2019 | 2758.50 | -356.48 | -1427.54 | -974.48 | | 2758.50 | 311462.68 | | 3213.20 | 298.08 | 2830.87 |
| 3/16/2020 | | | | Payment Reversal | 11/1/2019 | 5517.00 | -354.86 | -1429.16 | -974.48 | | 2758.50 | 311817.54 | | 2238.72 | 298.08 | 5589.37 |
| 3/16/2020 | | | | Payment Reversal | | 5517.00 | | | | | -5490.81 | 311817.54 | | 2238.72 | 298.08 | 98.56 |
| 3/16/2020 | | | 15.00 | Fees Billed | | 5517.00 | | | | 15.00 | | 311817.54 | | 2238.72 | 313.08 | 98.56 |
| 3/19/2020 | | | | Suspense Transaction | | 5517.00 | | | | | 5490.81 | 311817.54 | | 2238.72 | 313.08 | 5589.37 |

| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & Esc Past Due Balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied Funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/ Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/19/2020 | | 15.00 | | Payments Posting | *12/01/2019 | 2758.50 | 354.86 | 1429.16 | 974.48 | | -2773.50 | 311462.68 | | 3213.20 | 313.08 | 2815.87 |
| 3/19/2020 | | | | Payments Posting | *1/01/2020 | 0.00 | 356.48 | 1427.54 | 974.48 | | -2758.50 | 311106.20 | | 4187.68 | 313.08 | 57.37 |
| 3/19/2020 | | | | Taxes Paid | | 0.00 | | | -2,118.00 | | | 311106.20 | | 2069.68 | 313.08 | 57.37 |
| 3/26/2020 | | | | MIP Paid | | 0.00 | | | -217.40 | | | 311106.20 | | 1852.28 | 313.08 | 57.37 |
| 4/7/2020 | | | -79.00 | Fee Removed / Not Transfer | | 0.00 | | | | -79.00 | | 311106.20 | | 1852.28 | 234.08 | 57.37 |
| 4/30/2020 | | | | Insurance Paid | | 0.00 | | | -1,707.00 | | | 311106.20 | | 145.28 | 234.08 | 57.37 |
| 5/4/2020 | | | | MIP Paid | | 0.00 | | | -217.40 | | | 311106.20 | | -72.12 | 234.08 | 57.37 |
| 5/21/2020 | | | | Funds Received | | 0.00 | | | | | | 311106.20 | | -72.12 | 234.08 | 57.37 |
| 6/4/2020 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -286.49 | 234.08 | 57.37 |
| 7/6/2020 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -500.86 | 234.08 | 57.37 |
| 8/4/2020 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -715.23 | 234.08 | 57.37 |
| 8/10/2020 | | | | Taxes Paid | | 0.00 | | | -6,617.00 | | | 311106.20 | | -7332.23 | 234.08 | 57.37 |
| 9/3/2020 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -7546.60 | 234.08 | 57.37 |
| 10/5/2020 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -7760.97 | 234.08 | 57.37 |
| 11/4/2020 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -7975.34 | 234.08 | 57.37 |
| 12/4/2020 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -8189.71 | 234.08 | 57.37 |
| 1/4/2021 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -8404.08 | 234.08 | 57.37 |
| 2/4/2021 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -8618.45 | 234.08 | 57.37 |
| 3/3/2021 | | | | Taxes Paid | | 0.00 | | | -2,140.00 | | | 311106.20 | | -10758.45 | 234.08 | 57.37 |
| 3/4/2021 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -10972.82 | 234.08 | 57.37 |
| 4/5/2021 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -11187.19 | 234.08 | 57.37 |
| 4/12/2021 | | | | Insurance Paid | | 0.00 | | | -2,334.00 | | | 311106.20 | | -13521.19 | 234.08 | 57.37 |
| 5/4/2021 | | | | MIP Paid | | 0.00 | | | -214.37 | | | 311106.20 | | -13735.56 | 234.08 | 57.37 |
| 6/4/2021 | | | | MIP Paid | | 0.00 | | | -211.18 | | | 311106.20 | | -13946.74 | 234.08 | 57.37 |
| 7/2/2021 | | | | MIP Paid | | 0.00 | | | -211.18 | | | 311106.20 | | -14157.92 | 234.08 | 57.37 |
| 7/12/2021 | | | | Taxes Paid | | 0.00 | | | -6,815.00 | | | 311106.20 | | -20972.92 | 234.08 | 57.37 |
| 8/4/2021 | | | | MIP Paid | | 0.00 | | | -211.18 | | | 311106.20 | | -21184.10 | 234.08 | 57.37 |
| 9/3/2021 | | | | MIP Paid | | 0.00 | | | -211.18 | | | 311106.20 | | -21395.28 | 234.08 | 57.37 |
| 10/4/2021 | | | | MIP Paid | | 0.00 | | | -211.18 | | | 311106.20 | | -21606.46 | 234.08 | 57.37 |
| 11/1/2021 | | 2864.00 | | Funds Received | | 0.00 | | | | | | 311106.20 | | -21606.46 | 234.08 | 57.37 |
| 11/1/2021 | | | | Suspense Transaction | | 0.00 | | | | | 2864.00 | 311106.20 | | -21606.46 | 234.08 | 2921.37 |
| 11/4/2021 | | | | MIP Paid | | 0.00 | | | -211.18 | | | 311106.20 | | -21817.64 | 234.08 | 2921.37 |
| 11/5/2021 | | | | Suspense Transaction | | 0.00 | | | | | -2864.00 | 311106.20 | | -21817.64 | 234.08 | 57.37 |
| 11/5/2021 | | | 15.00 | Billed - Nsf Fee | | 0.00 | | | | 15.00 | | 311106.20 | | -21817.64 | 249.08 | 57.37 |
| 12/6/2021 | | | | MIP Paid | | 0.00 | | | -211.18 | | | 311106.20 | | -22028.82 | 249.08 | 57.37 |
| 1/4/2022 | | | | MIP Paid | | 0.00 | | | -211.18 | | | 311106.20 | | -22240.00 | 249.08 | 57.37 |
| 2/1/2022 | 2484.63 | | | Contractual Payment Due | 2/1/2022 | 2484.63 | | | | | | 311106.20 | | -22240.00 | 249.08 | 57.37 |
| 2/1/2022 | | | -214.08 | Late Fees | 1/1/2022 | 2484.63 | | | | -214.08 | | 311106.20 | | -22240.00 | 35.00 | 57.37 |
| 2/1/2022 | | | | Adjustment | | 2484.63 | | | 28,825.25 | | | 311106.20 | | 6585.25 | 35.00 | 57.37 |
| 2/1/2022 | | | | Adjustment | | 2484.63 | -57.37 | | | | | 311163.57 | | 6585.25 | 35.00 | 57.37 |
| 2/1/2022 | | | | Principal Curtailments | | 2484.63 | 57.37 | | | | -57.37 | 311106.20 | | 6585.25 | 35.00 | 0.00 |
| 2/4/2022 | | | | MIP Paid | | 2484.63 | | | -211.18 | | | 311106.20 | | 6374.07 | 35.00 | 0.00 |
| 2/8/2022 | | 2484.63 | | Funds Received | | 2484.63 | | | | | | 311106.20 | | 6374.07 | 35.00 | 0.00 |
| 2/8/2022 | | | | Payments Posting | *2/01/2022 | 0.00 | 522.53 | 810.17 | 1,151.93 | | | 310583.67 | | 7526.00 | 35.00 | 0.00 |
| 2/14/2022 | | | | Payment Reversal | 1/1/2022 | 2484.63 | -522.53 | -810.17 | -1,151.93 | | | 311106.20 | | 6374.07 | 35.00 | 0.00 |
| 2/14/2022 | | | 15.00 | Billed - Nsf Fee | | 2484.63 | | | | 15.00 | | 311106.20 | | 6374.07 | 50.00 | 0.00 |
| 2/15/2022 | | 2484.63 | | Funds Received | | 2484.63 | | | | | | 311106.20 | | 6374.07 | 50.00 | 0.00 |
| 2/15/2022 | | | | Payments Posting | *2/01/2022 | 0.00 | 522.53 | 810.17 | 1,151.93 | | | 310583.67 | | 7526.00 | 50.00 | 0.00 |
| 2/15/2022 | | | | Principal Transaction | | 2484.63 | 3.30 | | | | | 310583.37 | | 7526.00 | 50.00 | 0.00 |
| 2/15/2022 | | | -50.00 | Fee Transaction | | 0.00 | | | | -50.00 | | 310583.37 | | 7526.00 | 0.00 | 0.00 |
| 2/23/2022 | | | | Payment Reversal | 1/1/2022 | 2484.63 | -522.53 | -810.17 | -1,151.93 | | | 311102.90 | | 6374.07 | 0.00 | 0.00 |
| 2/23/2022 | | | | Curtailment Reversal | | 2484.63 | -3.30 | | | | | 311106.20 | | 6374.07 | 0.00 | 0.00 |
| 2/23/2022 | | | 15.00 | Billed - Nsf Fee | | 2484.63 | | | | 15.00 | | 311106.20 | | 6374.07 | 15.00 | 0.00 |
| 2/23/2022 | | | 50.00 | Fee Reversal | | 2484.63 | | | | 50.00 | | 311106.20 | | 6374.07 | 65.00 | 0.00 |
| 3/1/2022 | 2484.63 | | | Contractual Payment Due | 3/1/2022 | 4969.26 | | | | | | 311106.20 | | 6374.07 | 65.00 | 0.00 |
| 3/4/2022 | | | | MIP Paid | | 4969.26 | | | -211.18 | | | 311106.20 | | 6162.89 | 65.00 | 0.00 |
| 3/11/2022 | | | | Taxes Paid | | 4969.26 | | | -2,259.00 | | | 311106.20 | | 3903.89 | 65.00 | 0.00 |
| 3/16/2022 | | 5022.56 | | Funds Received | | 4969.26 | | | | | | 311106.20 | | 3903.89 | 65.00 | 0.00 |
| 3/16/2022 | | | 53.30 | Late Fees | 2/1/2022 | 2484.63 | | | | 53.30 | | 310583.67 | | 5055.82 | 65.00 | 0.00 |
| 3/16/2022 | | | | Payments Posting | *2/01/2022 | 2484.63 | 522.53 | 810.17 | 1,151.93 | | | 310583.67 | | 5055.82 | 118.30 | 0.00 |
| 3/16/2022 | | | | Payments Posting | *3/01/2022 | 0.00 | 523.89 | 808.81 | 1,151.93 | | | 310059.78 | | 6207.75 | 118.30 | 0.00 |
| 3/16/2022 | | | -53.30 | Late Fees | 3/1/2022 | 0.00 | | | | -53.30 | | 310059.78 | | 6207.75 | 65.00 | 0.00 |
| 3/23/2022 | | 53.30 | | Funds Received | | 0.00 | | | | | | 310059.78 | | 6207.75 | 65.00 | 0.00 |
| 3/23/2022 | | | | Payment Reversal | 2/1/2022 | 2484.63 | -523.89 | -808.81 | -1,151.93 | | 2484.63 | 310583.67 | | 5055.82 | 65.00 | 2484.63 |
| 3/23/2022 | | | 53.30 | Late Fees | 2/1/2022 | 2484.63 | | | | 53.30 | | 310583.67 | | 5055.82 | 118.30 | 2484.63 |
| 3/23/2022 | | | | Payment Reversal | 1/1/2022 | 4969.26 | -522.53 | -810.17 | -1,151.93 | | 2484.63 | 311106.20 | | 3903.89 | 118.30 | 4969.26 |

| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & Esc Past Due Balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied Funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/ Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/23/2022 | | | -53.30 | Late Fees | 1/1/2022 | 4969.26 | | | | -53.30 | 53.30 | 311106.20 | | 3903.89 | 65.00 | 5022.56 |
| 3/23/2022 | | | | Payment Reversal | | 4969.26 | | | | | -5022.56 | 311106.20 | | 3903.89 | 65.00 | 0.00 |
| 3/23/2022 | | | 15.00 | Billed - Nsf Fee | | 4969.26 | | | | 15.00 | | 311106.20 | | 3903.89 | 80.00 | 0.00 |
| 3/23/2022 | | | | Suspense Transaction | | 4969.26 | | | | | 5200.00 | 311106.20 | | 3903.89 | 80.00 | 5200.00 |
| 3/23/2022 | | | | Payments Posting | *2/01/2022 | 2484.63 | 522.53 | 810.17 | 1,151.93 | | -2484.63 | 310583.67 | | 5055.82 | 80.00 | 2715.37 |
| 3/23/2022 | | | 53.30 | Late Fees | 2/1/2022 | 2484.63 | | | | 53.30 | | 310583.67 | | 5055.82 | 133.30 | 2715.37 |
| 3/23/2022 | | | 53.30 | Payments Posting | *3/01/2022 | 0.00 | 523.89 | 808.81 | 1,151.93 | | -2537.93 | 310059.78 | | 6207.75 | 133.30 | 177.44 |
| 3/23/2022 | | | -53.30 | Late Fees | 3/1/2022 | 0.00 | | | | -53.30 | -53.30 | 310059.78 | | 6207.75 | 80.00 | 124.14 |
| 3/23/2022 | | | | Principal Transaction | | 0.00 | 44.14 | | | | -44.14 | 310015.64 | | 6207.75 | 80.00 | 80.00 |
| 3/23/2022 | | | -80.00 | Fee Transaction | | 0.00 | | | | -80.00 | -80.00 | 310015.64 | | 6207.75 | 0.00 | 0.00 |
| 4/1/2022 | 2484.63 | | | Contractual Payment Due | 4/1/2022 | 2484.63 | | | | | | 310015.64 | | 6207.75 | 0.00 | 0.00 |
| 4/4/2022 | | | | MIP Paid | | 2484.63 | | | -211.18 | | | 310015.64 | | 5996.57 | 0.00 | 0.00 |
| 4/12/2022 | | | | Insurance Paid | | 2484.63 | | | -2,982.00 | | | 310015.64 | | 3014.57 | 0.00 | 0.00 |
| 4/15/2022 | | 2484.63 | | Funds Received | | 2484.63 | | | | | | 310015.64 | | 3014.57 | 0.00 | 0.00 |
| 4/15/2022 | | | | Payments Posting | *4/01/2022 | 0.00 | 525.37 | 807.33 | 1,151.93 | | | 309490.27 | | 4166.50 | 0.00 | 0.00 |
| 4/22/2022 | | | | Payment Reversal | 3/1/2022 | 2484.63 | -525.37 | -807.33 | -1,151.93 | | | 310015.64 | | 3014.57 | 0.00 | 0.00 |
| 4/22/2022 | | | 15.00 | Billed - Nsf Fee | | 2484.63 | | | | 15.00 | | 310015.64 | | 3014.57 | 15.00 | 0.00 |
| 4/25/2022 | | 2537.93 | | Funds Received | | 2484.63 | | | | | | 310015.64 | | 3014.57 | 15.00 | 0.00 |
| 4/25/2022 | | | 53.30 | Payments Posting | *4/01/2022 | 0.00 | 525.37 | 807.33 | 1,151.93 | | | 309490.27 | | 4166.50 | 15.00 | 0.00 |
| 5/1/2022 | 2484.63 | | | Contractual Payment Due | 5/1/2022 | 2484.63 | | | | | | 309490.27 | | 4166.50 | 15.00 | 0.00 |
| 5/4/2022 | | | | MIP Paid | | 2484.63 | | | -211.18 | | | 309490.27 | | 3955.32 | 15.00 | 0.00 |
| 5/16/2022 | | 2484.63 | | Funds Received | | 2484.63 | | | | | | 309490.27 | | 3955.32 | 15.00 | 0.00 |
| 5/16/2022 | | | | Payments Posting | *5/01/2022 | 0.00 | 526.74 | 805.96 | 1,151.93 | | | 308963.53 | | 5107.25 | 15.00 | 0.00 |
| 5/23/2022 | | | | Payment Reversal | 4/1/2022 | 2484.63 | -526.74 | -805.96 | -1,151.93 | | | 309490.27 | | 3955.32 | 15.00 | 0.00 |
| 5/23/2022 | | | 15.00 | Billed - Nsf Fee | | 2484.63 | | | | 15.00 | | 309490.27 | | 3955.32 | 30.00 | 0.00 |
| 6/1/2022 | 2484.63 | | | Contractual Payment Due | 6/1/2022 | 4969.26 | | | | | | 309490.27 | | 3955.32 | 30.00 | 0.00 |
| 6/6/2022 | | | | MIP Paid | | 4969.26 | | | -207.81 | | | 309490.27 | | 3747.51 | 30.00 | 0.00 |
| 7/1/2022 | 2484.63 | | | Contractual Payment Due | 7/1/2022 | 7453.89 | | | | | | 309490.27 | | 3747.51 | 30.00 | 0.00 |
| 7/5/2022 | | | | MIP Paid | | 7453.89 | | | -207.81 | | | 309490.27 | | 3539.70 | 30.00 | 0.00 |
| 7/11/2022 | | 5000.00 | | Funds Received | | 7453.89 | | | | | | 309490.27 | | 3539.70 | 30.00 | 0.00 |
| 7/11/2022 | | | | Payments Posting | *5/01/2022 | 4969.26 | 526.74 | 805.96 | 1,151.93 | | | 308963.53 | | 4691.63 | 30.00 | 0.00 |
| 7/11/2022 | | | 53.30 | Late Fees | 5/1/2022 | 4969.26 | | | | 53.30 | | 308963.53 | | 4691.63 | 83.30 | 0.00 |
| 7/11/2022 | | | | Payments Posting | *6/01/2022 | 2484.63 | 528.11 | 804.59 | 1,151.93 | | | 308435.42 | | 5843.56 | 83.30 | 0.00 |
| 7/11/2022 | | | 53.30 | Late Fees | 6/1/2022 | 2484.63 | | | | 53.30 | | 308435.42 | | 5843.56 | 136.60 | 0.00 |
| 7/11/2022 | | | | Suspense Transaction | | 2484.63 | | | | | 30.74 | 308435.42 | | 5843.56 | 136.60 | 30.74 |
| 7/22/2022 | | | | Taxes Paid | | 2484.63 | | | -6,925.00 | | | 308435.42 | | -1081.44 | 136.60 | 30.74 |
| 8/1/2022 | 2484.63 | | | Contractual Payment Due | 8/1/2022 | 4969.26 | | | | | | 308435.42 | | -1081.44 | 136.60 | 30.74 |
| 8/4/2022 | | | | MIP Paid | | 4969.26 | | | -207.81 | | | 308435.42 | | -1289.25 | 136.60 | 30.74 |
| 8/9/2022 | | 2507.19 | | Funds Received | | 4969.26 | | | | | | 308435.42 | | -1289.25 | 136.60 | 30.74 |
| 8/9/2022 | | | | Payments Posting | *7/01/2022 | 2484.63 | 529.48 | 803.22 | 1,151.93 | | | 307905.94 | | -137.32 | 136.60 | 30.74 |
| 8/9/2022 | | | | Suspense Transaction | | 2484.63 | | | | | 22.56 | 307905.94 | | -137.32 | 136.60 | 53.30 |
| 8/9/2022 | | | 53.30 | Late Fees | 7/1/2022 | 2484.63 | | | | 53.30 | | 307905.94 | | -137.32 | 189.90 | 53.30 |
| 8/10/2022 | | | -53.30 | Late Fees | 7/1/2022 | 2484.63 | | | | -53.30 | -53.30 | 307905.94 | | -137.32 | 136.60 | 0.00 |
| 9/1/2022 | 2484.63 | | | Contractual Payment Due | 9/1/2022 | 4969.26 | | | | | | 307905.94 | | -137.32 | 136.60 | 0.00 |
| 9/2/2022 | | | | MIP Paid | | 4969.26 | | | -207.81 | | | 307905.94 | | -345.13 | 136.60 | 0.00 |
| 9/7/2022 | | 2537.93 | | Funds Received | | 4969.26 | | | | | | 307905.94 | | -345.13 | 136.60 | 0.00 |
| 9/7/2022 | | | | Payments Posting | *8/01/2022 | 2484.63 | 530.86 | 801.84 | 1,151.93 | | | 307375.08 | | 806.80 | 136.60 | 0.00 |
| 9/7/2022 | | | | Suspense Transaction | | 2484.63 | | | | | 53.30 | 307375.08 | | 806.80 | 136.60 | 53.30 |
| 9/7/2022 | | | 53.30 | Late Fees | 8/1/2022 | 2484.63 | | | | 53.30 | | 307375.08 | | 806.80 | 189.90 | 53.30 |
| 9/8/2022 | | | -53.30 | Late Fees | 8/1/2022 | 2484.63 | | | | -53.30 | -53.30 | 307375.08 | | 806.80 | 136.60 | 0.00 |
| 10/1/2022 | 2484.63 | | | Contractual Payment Due | 10/1/2022 | 4969.26 | | | | | | 307375.08 | | 806.80 | 136.60 | 0.00 |
| 10/4/2022 | | | | MIP Paid | | 4969.26 | | | -207.81 | | | 307375.08 | | 598.99 | 136.60 | 0.00 |
| 11/1/2022 | 2484.63 | | | Contractual Payment Due | 11/1/2022 | 7453.89 | | | | | | 307375.08 | | 598.99 | 136.60 | 0.00 |
| 11/4/2022 | | | | MIP Paid | | 7453.89 | | | -207.81 | | | 307375.08 | | 391.18 | 136.60 | 0.00 |
| 11/9/2022 | | | 20.00 | Billed - Recoverable Insp Fee | | 7453.89 | | | | 20.00 | | 307375.08 | | 391.18 | 156.60 | 0.00 |
| 11/29/2022 | | 5075.86 | | Funds Received | | 7453.89 | | | | | | 307375.08 | | 391.18 | 156.60 | 0.00 |
| 11/29/2022 | | | | Payments Posting | *9/01/2022 | 4969.26 | 532.24 | 800.46 | 1,151.93 | | | 306842.84 | | 1543.11 | 156.60 | 0.00 |
| 11/29/2022 | | | 53.30 | Late Fees | 9/1/2022 | 4969.26 | | | | 53.30 | | 306842.84 | | 1543.11 | 209.90 | 0.00 |
| 11/29/2022 | | | | Payments Posting | *10/01/2022 | 2484.63 | 533.63 | 799.07 | 1,151.93 | | | 306309.21 | | 2695.04 | 209.90 | 0.00 |
| 11/29/2022 | | | 53.30 | Late Fees | 10/1/2022 | 2484.63 | | | | 53.30 | | 306309.21 | | 2695.04 | 263.20 | 0.00 |
| 11/29/2022 | | | | Suspense Transaction | | 2484.63 | | | | | 106.60 | 306309.21 | | 2695.04 | 263.20 | 106.60 |
| 11/30/2022 | | | -106.60 | Late Fees | 10/1/2022 | 2484.63 | | | | -106.60 | -106.60 | 306309.21 | | 2695.04 | 156.60 | 0.00 |
| 12/1/2022 | 2484.63 | | | Contractual Payment Due | 12/1/2022 | 4969.26 | | | | | | 306309.21 | | 2695.04 | 156.60 | 0.00 |
| 12/2/2022 | | | | MIP Paid | | 4969.26 | | | -207.81 | | | 306309.21 | | 2487.23 | 156.60 | 0.00 |
| 12/6/2022 | | | 106.60 | Late Fees | 10/1/2022 | 4969.26 | | | | 106.60 | | 306309.21 | | 2487.23 | 263.20 | 106.60 |
| 12/6/2022 | | | | Payment Reversal | 9/1/2022 | 7453.89 | -533.63 | -799.07 | -1,151.93 | | 2484.63 | 306842.84 | | 1335.30 | 263.20 | 2591.23 |

| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & Esc Past Due Balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied Funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/ Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/6/2022 | | | -53.30 | Late Fees | 9/1/2022 | 7453.89 | | | | -53.30 | | 306842.84 | | 1335.30 | 209.90 | 2591.23 |
| 12/6/2022 | | | | Payment Reversal | 8/1/2022 | 9938.52 | -532.24 | -800.46 | -1,151.93 | | 2484.63 | 307375.08 | | 183.37 | 209.90 | 5075.86 |
| 12/6/2022 | | | -53.30 | Late Fees | 8/1/2022 | 9938.52 | | | | -53.30 | | 307375.08 | | 183.37 | 156.60 | 5075.86 |
| 12/6/2022 | | | | Payment Reversal | | 9938.52 | | | | | -5075.86 | 307375.08 | | 183.37 | 156.60 | 0.00 |
| 12/21/2022 | | 5075.86 | | Funds Received | | 9938.52 | | | | | | 307375.08 | | 183.37 | 156.60 | 0.00 |
| 12/21/2022 | | | | Payments Posting | *9/01/2022 | 7453.89 | 532.24 | 800.46 | 1,151.93 | | | 306842.84 | | 1335.30 | 156.60 | 0.00 |
| 12/21/2022 | | | | Payments Posting | *10/01/2022 | 4969.26 | 533.63 | 799.07 | 1,151.93 | | | 306309.21 | | 2487.23 | 156.60 | 0.00 |
| 12/21/2022 | | | | Suspense Transaction | | 4969.26 | | | | | 106.60 | 306309.21 | | 2487.23 | 156.60 | 106.60 |
| 12/27/2022 | | | | Payment Reversal | 9/1/2022 | 7453.89 | -533.63 | -799.07 | -1,151.93 | | 2484.63 | 306842.84 | | 1335.30 | 156.60 | 2591.23 |
| 12/27/2022 | | | | Payment Reversal | 8/1/2022 | 9938.52 | -532.24 | -800.46 | -1,151.93 | | 2484.63 | 307375.08 | | 183.37 | 156.60 | 5075.86 |
| 12/27/2022 | | | | Suspense Transaction | | 9938.52 | | | | | -5075.86 | 307375.08 | | 183.37 | 156.60 | 0.00 |
| 1/1/2023 | 2662.00 | | | Contractual Payment Due | 1/1/2023 | 12600.52 | | | | | | 307375.08 | | 183.37 | 156.60 | 0.00 |
| 1/4/2023 | | | | MIP Paid | | 12600.52 | | | -207.81 | | | 307375.08 | | -24.44 | 156.60 | 0.00 |
| 1/10/2023 | | 5075.86 | | Funds Received | | 12600.52 | | | | | | 307375.08 | | -24.44 | 156.60 | 0.00 |
| 1/10/2023 | | | | Payments Posting | *9/01/2022 | 10115.89 | 532.24 | 800.46 | 1,151.93 | | | 306842.84 | | 1127.49 | 156.60 | 0.00 |
| 1/10/2023 | | | | Payments Posting | *10/01/2022 | 7631.26 | 533.63 | 799.07 | 1,151.93 | | | 306309.21 | | 2279.42 | 156.60 | 0.00 |
| 1/10/2023 | | | | Suspense Transaction | | 7631.26 | | | | | 106.60 | 306309.21 | | 2279.42 | 156.60 | 106.60 |
| 2/1/2023 | 2662.00 | | | Contractual Payment Due | 2/1/2023 | 10293.26 | | | | | | 306309.21 | | 2279.42 | 156.60 | 106.60 |
| 2/3/2023 | | | | MIP Paid | | 10293.26 | | | -207.81 | | | 306309.21 | | 2071.61 | 156.60 | 106.60 |
| 3/1/2023 | 2662.00 | | | Contractual Payment Due | 3/1/2023 | 12955.26 | | | | | | 306309.21 | | 2071.61 | 156.60 | 106.60 |
| 3/1/2023 | | | | Taxes Paid | | 12955.26 | | | -2,381.00 | | | 306309.21 | | -309.39 | 156.60 | 106.60 |

# ///// **Midland Mortgage**

*A Division of MidFirst Bank*

CORY LEWIS
1211 GREENWOOD AVE
WYNCOTE          PA 19119

YOUR LOAN NUMBER: ▓▓▓▓▓▓▓
BANKRUPTCY CASE # 23-10629-13

DATE: 03/03/23

*** ESCROW ACCOUNT DISCLOSURE STATEMENT - PROJECTIONS ***

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED.
THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS
REFUNDS, OR ANY SHORTAGE YOU MUST PAY. IT ALSO SHOWS YOU THE ANTICIPATED
ESCROW ACTIVITY FOR YOUR ESCROW CYCLE BEGINNING    04/23 THROUGH    03/24.
------- ANTICIPATED PAYMENTS FROM ESCROW -    04/23 THROUGH    03/24 -------
```
                HAZARD                      2982.00
                MIP PREM TO HUD             2493.72
                CITY/TOWN TAX              2381.00
                SCHOOL DISTRICT            6925.00

        TOTAL PAYMENTS FROM ESCROW      14781.72

        MONTHLY PAYMENT TO ESCROW        1231.81 (1/12TH OF ABOVE TOTAL)
```

------- ANTICIPATED ESCROW ACTIVITY -    04/23 THROUGH    03/24--------

| MONTH | TO ESCROW | FROM ESCROW | DESCRIPTION | ANTICIPATED | | REQUIRED |
|-------|-----------|-------------|-------------|-------------|---|----------|
| | | ACTUAL | STARTING BALANCE | 5774.56 | | 6835.00 |
| APR 23 | 1231.81 | 2982.00 | HAZARD | | | |
| | | 207.81 | MIP PREM TO HUD | 3816.56 | | 4877.00 |
| MAY 23 | 1231.81 | 207.81 | MIP PREM TO HUD | 4840.56 | | 5901.00 |
| JUN 23 | 1231.81 | 207.81 | MIP PREM TO HUD | 5864.56 | | 6925.00 |
| JUL 23 | 1231.81 | 207.81 | MIP PREM TO HUD | 6888.56 | | 7949.00 |
| AUG 23 | 1231.81 | 207.81 | MIP PREM TO HUD | | | |
| | | 6925.00 | SCHOOL DISTR ALP | 987.56 | RLP | 2048.00 |
| SEP 23 | 1231.81 | 207.81 | MIP PREM TO HUD | 2011.56 | | 3072.00 |
| OCT 23 | 1231.81 | 207.81 | MIP PREM TO HUD | 3035.56 | | 4096.00 |
| NOV 23 | 1231.81 | 207.81 | MIP PREM TO HUD | 4059.56 | | 5120.00 |
| DEC 23 | 1231.81 | 207.81 | MIP PREM TO HUD | 5083.56 | | 6144.00 |
| JAN 24 | 1231.81 | 207.81 | MIP PREM TO HUD | 6107.56 | | 7168.00 |
| FEB 24 | 1231.81 | 207.81 | MIP PREM TO HUD | 7131.56 | | 8192.00 |
| MAR 24 | 1231.81 | 207.81 | MIP PREM TO HUD | | | |
| | | 2381.00 | CITY/TOWN TAX | 5774.56 | | 6835.00 |

(header row: -ANTICIPATED PAYMENTS-    -- ESCROW BALANCE COMPARISON --)

------------ DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE ------------

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS LESS THAN THE REQUIRED BALANCE
(RLP), THEN YOU HAVE AN ESCROW SHORTAGE. YOUR ESCROW SHORTAGE IS    -1060.44.

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS GREATER THAN THE REQUIRED
BALANCE (RLP), THEN YOU HAVE AN ESCROW SURPLUS. YOUR SURPLUS IS    0.00.

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK 73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959

# Midland Mortgage

*A Division of MidFirst Bank*

```
*ADJUSTED ESCROW SHORTAGE IS                                   0.00.
------------------ CALCULATION OF YOUR NEW PAYMENT AMOUNT ------------------
            PRINCIPAL & INTEREST                        1332.70
            ESCROW (1/12TH OF ANNUAL ANTICIPATED        1231.81
               DISBURSEMENTS AS COMPUTED ABOVE)
            PLUS: OPTIONAL INSURANCE PREMIUMS               0.00
            PLUS: REPLACEMENT RESERVE OR FHA SVC CHG        0.00
            PLUS: SHORTAGE PAYMENT                          0.00
            MINUS: SURPLUS CREDIT                           0.00
            ROUNDING ADJUSTMENT                             0.00
            MINUS: BUYDOWN/ASSISTANCE PAYMENTS              0.00


BORROWER PAYMENT STARTING WITH THE PAYMENT DUE 04/01/23    2564.51
NOTE: YOUR ESCROW BALANCE MAY CONTAIN A CUSHION. A CUSHION IS AN AMOUNT OF
MONEY HELD IN YOUR ESCROW ACCOUNT TO PREVENT YOUR ESCROW BALANCE FROM BEING
OVERDRAWN WHEN INCREASES IN THE DISBURSEMENTS OCCUR. FEDERAL LAW AUTHORIZES
A MAXIMUM ESCROW CUSHION NOT TO EXCEED 1/6TH OF THE TOTAL ANNUAL ANTICIPATED
ESCROW DISBURSEMENTS MADE DURING THE ABOVE CYCLE. THIS AMOUNT IS    2048.00.
YOUR LOAN DOCUMENTS OR STATE LAW MAY REQUIRE A LESSER CUSHION. WHEN YOUR
ESCROW BALANCE REACHES ITS LOWEST POINT DURING THE ABOVE CYCLE, THAT BALANCE
IS TARGETED TO BE YOUR CUSHION AMOUNT.

YOUR ESCROW CUSHION FOR THIS CYCLE IS       2048.00.


YOUR ANTICIPATED ESCROW BALANCE CONSISTS OF THE FOLLOWING DETAIL (AN * NEXT
TO AN AMOUNT INDICATES THIS IS A TOTAL THAT REPRESENTS MORE THAN ONE PAYMENT
TO OR DISBURSEMENT FROM ESCROW):
ESCROW PAYMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
11/22     1151.93     12/22     1151.93     01/23     3987.90    *
ESCROW DISBURSEMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
03/23    207.81 MIP PREM TO HUD        00/00     0.00
00/00     0.00                        00/00     0.00
00/00     0.00                        00/00     0.00
```

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK 73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959

# ∭ Midland Mortgage

*A Division of MidFirst Bank*

YOUR LOAN NUMBER: [redacted]

\*\*\* POC DISCLOSURE ESCROW ACCOUNT HISTORY \*\*\*

| DATE | TRANSACTION TYPE | AMOUNT | ESC BAL |
|------|------------------|--------|---------|
| 3/4/2022 | MORTGAGE INSURANCE PREMIUM | ($211.18) | $6,162.89 |
| 3/11/2022 | PROPERTY TAX PAYMENT | ($2,259.00) | $3,903.89 |
| 3/16/2022 | ESCROW DEPOSIT | $1,151.93 | $6,207.75 |
| 3/16/2022 | ESCROW DEPOSIT | $1,151.93 | $5,055.82 |
| 3/23/2022 | ESCROW REVERSAL | ($1,151.93) | $3,903.89 |
| 3/23/2022 | ESCROW DEPOSIT | $1,151.93 | $6,207.75 |
| 3/23/2022 | ESCROW DEPOSIT | $1,151.93 | $5,055.82 |
| 3/23/2022 | ESCROW REVERSAL | ($1,151.93) | $5,055.82 |
| 4/4/2022 | MORTGAGE INSURANCE PREMIUM | ($211.18) | $5,996.57 |
| 4/12/2022 | PROPERTY INSURANCE PAYMENT | ($2,982.00) | $3,014.57 |
| 4/15/2022 | ESCROW DEPOSIT | $1,151.93 | $4,166.50 |
| 4/22/2022 | ESCROW REVERSAL | ($1,151.93) | $3,014.57 |
| 4/25/2022 | ESCROW DEPOSIT | $1,151.93 | $4,166.50 |
| 5/4/2022 | MORTGAGE INSURANCE PREMIUM | ($211.18) | $3,955.32 |
| 5/16/2022 | ESCROW DEPOSIT | $1,151.93 | $5,107.25 |
| 5/23/2022 | ESCROW REVERSAL | ($1,151.93) | $3,955.32 |

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK  73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK  73126-8959

# ///// Midland Mortgage

*A Division of MidFirst Bank*

YOUR LOAN NUMBER:

**\*\*\* POC DISCLOSURE ESCROW ACCOUNT HISTORY \*\*\***

| 6/6/2022 | MORTGAGE INSURANCE PREMIUM | ($207.81) | $3,747.51 |
|---|---|---|---|
| 7/5/2022 | MORTGAGE INSURANCE PREMIUM | ($207.81) | $3,539.70 |
| 7/11/2022 | ESCROW DEPOSIT | $1,151.93 | $4,691.63 |
| 7/11/2022 | ESCROW DEPOSIT | $1,151.93 | $5,843.56 |
| 7/22/2022 | PROPERTY TAX PAYMENT | ($6,925.00) | ($1,081.44) |
| 8/4/2022 | MORTGAGE INSURANCE PREMIUM | ($207.81) | ($1,289.25) |
| 8/9/2022 | ESCROW DEPOSIT | $1,151.93 | ($137.32) |
| 9/2/2022 | MORTGAGE INSURANCE PREMIUM | ($207.81) | ($345.13) |
| 9/7/2022 | ESCROW DEPOSIT | $1,151.93 | $806.80 |
| 10/4/2022 | MORTGAGE INSURANCE PREMIUM | ($207.81) | $598.99 |
| 11/4/2022 | MORTGAGE INSURANCE PREMIUM | ($207.81) | $391.18 |
| 11/29/2022 | ESCROW DEPOSIT | $1,151.93 | $2,695.04 |
| 11/29/2022 | ESCROW DEPOSIT | $1,151.93 | $1,543.11 |
| 12/2/2022 | MORTGAGE INSURANCE PREMIUM | ($207.81) | $2,487.23 |
| 12/6/2022 | ESCROW REVERSAL | ($1,151.93) | $183.37 |
| 12/6/2022 | ESCROW REVERSAL | ($1,151.93) | $1,335.30 |

Midland Mortgage Customer Service
P.O. Box 26648 · Oklahoma City, OK 73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:
P.O. Box 268959 · Oklahoma City, OK 73126-8959

# /WW Midland Mortgage

*A Division of MidFirst Bank*

YOUR LOAN NUMBER:

*** POC DISCLOSURE ESCROW ACCOUNT HISTORY ***

| 12/21/2022 | ESCROW DEPOSIT | $1,151.93 | $1,335.30 |
|---|---|---|---|
| 12/21/2022 | ESCROW DEPOSIT | $1,151.93 | $2,487.23 |
| 12/27/2022 | ESCROW REVERSAL | ($1,151.93) | $183.37 |
| 12/27/2022 | ESCROW REVERSAL | ($1,151.93) | $1,335.30 |
| 1/4/2023 | MORTGAGE INSURANCE PREMIUM | ($207.81) | ($24.44) |
| 1/10/2023 | ESCROW DEPOSIT | $1,151.93 | $1,127.49 |
| 1/10/2023 | ESCROW DEPOSIT | $1,151.93 | $2,279.42 |
| 2/3/2023 | MORTGAGE INSURANCE PREMIUM | ($207.81) | $2,071.61 |
| 3/1/2023 | PROPERTY TAX PAYMENT | ($2,381.00) | ($309.39) |

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK  73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK  73126-8959

MIN:                                                    Loan Number:
                                                        Case Number:

# NOTE

APRIL 30, 2019                          MARLTON                          NEW JERSEY
[Date]                                  [City]                           [State]

1211 GREENWOOD AVE, WYNCOTE, PENNSYLVANIA 19095
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 314,204.00        (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is NATION ONE MORTGAGE CORPORATION, A NEW JERSEY CORPORATION                                                              .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        5.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on        JUNE 1        , 2019            . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on        MAY 1, 2049        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   701 ROUTE 73 NORTH, SUITE 2, MARLTON, NEW JERSEY 08053

or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,784.02                    .

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
4.000 % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

### (B)    Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)    Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)    No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)    Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:

(a)  any default described in Section 6(B) of this Note;
(b)  Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;
(c)  Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;
(d)  the Maturity Date as defined in this Note;
(e)  the entry of any judgment against me under this Note; and
(f)  the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
CORY LEWIS      -Borrower                     -Borrower

_____ (Seal)       _____ (Seal)
-Borrower                             -Borrower

_____ (Seal)       _____ (Seal)
-Borrower                             -Borrower

Loan Originator: Edward Leland Schmidt, NMLSR ID █████████
Loan Originator Organization: NATION ONE MORTGAGE CORPORATION, NMLSR ID
████████

*[Sign Original Only]*

# ALLONGE TO NOTE

**LOAN NUMBER:** ███████

**LOAN AMOUNT: $** 314,204.00

**ALLONGE TO ONE CERTAIN NOTE DATED: (Note Date)** APRIL 30, 2019

**AND EXECUTED BY:**

CORY LEWIS

**PROPERTY ADDRESS:**

1211 GREENWOOD AVE, WYNCOTE, PENNSYLVANIA 19095

**WITHOUT RECOURSE PAY TO THE ORDER OF:**

Nationstar Mortgage LLC dba Mr. Cooper

**NATION ONE MORTGAGE CORPORATION, A NEW JERSEY CORPORATION**

BY: _____

JOSEPH LANG

**TITLE:  PRESIDENT**

# ALLONGE

**Mr Cooper Loan #:** 
**Loan Number:**

**Borrower(s):    Cory Lewis**

**Property Address:  1211 Greenwood Ave, Wyncote, PA 19095**

**Principal Balance:  $ 314,204.00**

**Note Date: April 30, 2019**

## PAY TO THE ORDER OF
## MIDFIRST BANK

### Without Recourse

**Company Name:  Nationstar Mortgage, LLC D/B/A Mr. Cooper**

By: _____

**Steve Davenport**
**Manager, Production Ops Team**




**RECORDER OF DEEDS**
**MONTGOMERY COUNTY**
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MTG BK 15559 PG 00392 to 00404**
INSTRUMENT # : 2022040196
RECORDED DATE: 04/05/2022 09:15:01 AM



**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 13 |
|---|---|

| | |
|---|---|
| **Document Type:** Mortgage Modification | **Transaction #:** |
| **Document Date:** 12/13/2021 | **Document Page Count:** |
| **Reference Info:** | **Operator Id:** |

| | |
|---|---|
| **RETURN TO:** (Simplifile) | **PAID BY:** |
| First American Title Insurance Company | FIRST AMERICAN TITLE INSURANCE COMPANY |
| 3 First American Way | |
| Santa Ana, CA 92707-5913 | |
| (714) 250-4260 | |

**\* PROPERTY DATA:**
Parcel ID #:
Address:            1211 GREENWOOD AVE

                   WYNCOTE  PA
                   19095
Municipality:      Cheltenham Township (100%)
School District:   Cheltenham

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 14685 PG 00682

| **FEES / TAXES:** | | MTG BK 15559 PG 00392 to 00404 |
|---|---|---|
| Recording Fee:Mortgage | | Recorded Date: 04/05/2022 09:15:01 AM |
| Modification | $80.75 | |
| Additional Pages Fee | $16.00 | I hereby CERTIFY that this document is |
| | | recorded in the Recorder of Deeds Office in |
| **Total:** | $96.75 | Montgomery County, Pennsylvania. |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

When Recorded Mail to:
FIRST AMERICAN TITLE CO.
FAMS-DTO RECORDING
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-991

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
31-00-12622-00-1   CHELTENHAM TOWNSHIP
1211 GREENWOOD AVE
LEWIS CORY & KIRNON TOMOYO                    $15.00
B 156  L  U 012  1101 04/01/2022                      JW

Document Prepared by:
Allison Trent
MidFirst Bank
999 N.W. Grand Boulevard, Suite 100
Oklahoma City, OK 73118-6116
1-800-552-3000





Parcel #

Tax ID#

Please cross-reference to:   Book 14685 on Page 00682  Instrument 2019030553,
MONTGOMERY  County Pennsylvania.

## LOAN MODIFICATION AGREEMENT
**FIXED RATE LOAN** \*\*On 12/13/21

This Loan Modification Agreement ("Agreement"), made\* by and between   **CORY LEWIS &
TOMOYO KIRNON** ("Borrower")   MidFirst Bank, a federally chartered savings association
located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118 ("Lender"), and Mortgage Electronic
Registration Systems, Inc. ("MERS") ("Mortgagee")  renews, amends, supplements and
extends: (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") originated on
4/30/2019, recorded on 5/17/2019, in  Book 14685 on Page 00682  Instrument 2019030553, in
MONTGOMERY  County, Pennsylvania and granted or assigned to Mortgage Electronic
Registration Systems, Inc. ("MERS"), and (2) the Promissory Note ("Note") bearing the same
date, in the original principal amount of $314,204.00 and secured by, the Security Instrument
and other loan documents typically referred to as "addenda" or "riders" (collectively referred to

Page 1 of the Loan Modification Agreement
Order Number:
MERS MIN:

Borrower Initial Lines

\*Please add the appropriate number of initial lines for each
                                                   signatory over 4
                                   MERS Phone

MDLMP R 277 E 277 S L v2

herein as "Loan Documents"), which are secured by the real and personal property described in
the Security Instrument, located at 1211 GREENWOOD AVE, WYNCOTE, PA 19095-0000, the
real property described being set forth as follows:

See Exhibit "A" attached hereto and made a part hereof.

Parcel #

(Herein defined as "Property").

**Capitalized Amount: $0.00**
Being the same property conveyed to CORY LEWIS AND TOMOYO KIRNON by Deed
recorded 5/17/2019 and recorded in Book 6136 on Page 00793 Instrument 2019030552 in
MONTGOMERY County Pennsylvania.

Borrower is in default or at imminent risk of default under the Loan Documents and desires (i) that the
Lender forbear from exercising its rights under the Loan Documents, (ii) to extend or rearrange the time
and manner of payment of the Note and other obligations due to Lender under the Loan Documents, and
(iii) to extend and carry forward the lien(s) on the Property, whether created by the Security Instrument or
otherwise. Lender, the legal holder entitled to enforce the Note and of the lien(s) securing the same, has
agreed to Borrower's request to so forbear, to extend or rearrange the time and manner of payment of the
Note, and to grant certain other financial accommodations pursuant to the terms of this Agreement.

In consideration of the mutual promises and agreements exchanged, and other good and
valuable consideration paid by each of the parties to the other, the receipt and sufficiency of
which is hereby acknowledged, the parties mutually agree to modify, renew and extend the Note
and Security Instrument and any other Loan Documents, as follows (notwithstanding anything to
the contrary contained in the Note or Security Instrument):

## 1. **Acknowledgement of Unpaid Balance:**

Borrower acknowledges that as of the date of the first payment due under this
Agreement, Borrower owes Lender the unpaid balance of **$374,095.68 ("Unpaid
Balance")**, in addition to the other fees, charges and expenses described in the section
of the Agreement entitled "Acknowledgement of Unpaid Fees and Costs." The Unpaid
Balance includes unpaid principal of $311,106.20, unpaid interest of $34,221.60,
escrows advanced of $28,825.25, and certain unpaid fees of $0.00, less $57.37 in
suspense funds.

Borrower acknowledges that **$62,989.48** of the Unpaid Balance shall be paid by a new
loan, extended to Borrower by Department of Housing and Urban Development ("HUD")
according to the terms of HUD Partial Claim loan ("Partial Claim Loan") that is
memorialized in a Partial Claim Promissory Note and Subordinate Mortgage/Deed of
Trust between Borrower and HUD ("HUD Partial Claim Documents"). Borrower shall not
be required to make monthly payments to HUD on the Partial Claim Loan but, rather,
shall repay that amount to HUD according to the terms of the HUD Partial Claim
Documents.

Page 2 of the Loan Modification Agreement
Order Number
MERS MIN:

Borrower Initial Lines
*Please add the appropriate number of initial lines for each
signatory over 4
MERS Phone

MDLMP R 2F7 L 277 5.1 of 2

After removal of the Partial Claim Loan amount from the Unpaid Balance, the amount owed by Borrower to Lender under the terms of this Agreement is **$311,106.20** ("Modified Principal Balance"). Borrower hereby renews, extends and promises to pay the Modified Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Modified Principal Balance until the full amount of the Modified Principal Balance and the other amounts due hereunder and under the Loan Documents have been paid in accordance with the terms and conditions of the Loan Documents, as modified by this Agreement. All references in the Loan Documents to "Principal" shall be deemed to refer to the Modified Principal Balance.

## 2. **Acknowledgement of Unpaid Fees and Costs**:

Borrower agrees to remain responsible for payment of allowable costs and fees now due and owing ("Unpaid Fees and Costs") plus other allowable late charges, costs, fees and expenses incurred after this Agreement becomes effective (the total sum of which is referred to as "Fees and Costs"). Borrower agrees and acknowledges that Borrower received notice of Unpaid Fees and Costs due as of a date certain prior to execution of this Agreement.

Lender has agreed to postpone the collection of any outstanding Fees and Costs that are not paid in advance or that are not included in the Modified Principal Balance. Fees and Costs not included in the Modified Principal Balance remain due and owing as part of the debt secured by the Loan Documents to the extent provided in the Loan Documents and as otherwise permissible under applicable law. The outstanding Fees and Costs remain due and payable to Lender and shall be paid by Borrower, with interest, as permitted by the Loan Documents. Furthermore, outstanding Fees and Costs shall be payable to Lender on demand of Lender and shall be secured by the Security Instrument to the extent provided in the Security Instrument and otherwise permissible under applicable laws and requirements.

## 3. **Interest Calculation**:

Interest will be calculated at a fixed yearly interest rate of **3.125%**.

## 4. **Payment Amounts, Time of Payments and Maturity Date:**

a. Borrower acknowledges and agrees that Borrower shall, beginning on **2/1/2022**, through the Maturity Date, make monthly payments of U.S. **$1,332.70** for principal and interest and shall continue to make such payments in accordance with the terms and conditions set forth in the Loan Documents until the Modified Principal Balance is paid in full.

b. An escrow account has been established under the terms and conditions of the Loan Documents. Borrower will make an escrow payment each month on each payment due date. The escrow payment currently is **$1,151.93** per month, which is subject to change depending on the amounts attributable to taxes, insurance and other escrow

Borrower Initial Lines

*Please add the appropriate number of initial lines for each signatory over 4
MERS Phone

MDLMP R 277 E 277 S 1 of 2

items. **The present combined monthly payment and escrow payment will be $2,484.63.** The escrow payment will be re-analyzed from time to time in accordance with the terms of the Loan Documents to determine the appropriate escrow payment amount so that taxes, insurance, and other escrow items may be paid appropriately. The escrow payment amount will be combined with the monthly principal and interest payment amount.

c. The Maturity Date of the Loan is extended to **1/1/2052.** If Borrower still owes amounts to Lender on the Maturity Date, Borrower will pay these amounts in full on the Maturity Date.

## 5. Acknowledgment of Pre-Existing Conditions to Loan Modification:

The Borrower acknowledges and agrees this Agreement is subject to the following conditions, which must exist at the time this Agreement is executed:

a. All payments set forth in the Payment Schedule under the Loan Modification Trial Plan Agreement must have been made according to the Payment Schedule;
b. The Property has no physical conditions that will adversely affect the Borrower's continued use of the Property or interfere with the Borrower's ability to make payments as required under this Agreement; and
c. The Borrower (one or more) is occupying the Property as the Borrower's primary residence, unless occupancy by a Borrower is expressly not required by applicable Investor or Insurer guidance and program requirements; and
d. The Lender remains in the first lien position and there are no outstanding liens and/or judgments against the Property; and
e. If applicable, Bankruptcy Court approval; and
f. If applicable, all requirements for an assumption of the loan are satisfied and Lender has approved the assumption.

The Borrower acknowledges and agrees that in the event the conditions set forth in this paragraph are not satisfied, this Agreement shall become null and void unless otherwise expressly agreed by Lender in writing. In the event this Agreement becomes null and void as set forth in this paragraph, Borrower acknowledges and agrees all provisions of the Loan Documents shall continue in full force and effect and Lender shall be under no obligation to modify any provision of the Loan Documents under this Agreement.

## 6. Place of Payment:

Borrower agrees to make payments at the following address or such other place as the Lender may require upon written notice to Borrower:

Midland Mortgage - A Division of MidFirst Bank
Attn: Cashiers
P.O. Box 268888
Oklahoma City, OK 73126-8888

Page 4 of the Loan Modification Agreement
Order Number:
MERS MIN:

Borrower Initial Lines
*Please add the appropriate number of initial lines for each
signatory over 4
MERS Phone

MDLMP R 2 / 2 1 ; 2 / 2 1 ; 1 of 2

### 7. **Adjustable Rate Loan Provisions in Note:**

If the interest rate in the Interest Calculation section of this Agreement is calculated as provided in the Note, any rate and payment adjustment provisions in the Note will apply. If the interest rate in the Interest Calculation section of this Agreement is fixed, any rate and payment adjustment provisions in the Note will not apply.

### 8. **Sale or Transfer of Property by Borrower:**

a. If all or any part of the Property or any interest in it is sold or transferred (or, if Borrower is not a natural person, any beneficial interest in Borrower is sold or transferred) without the Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

b. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of the designated period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

### 9. **Compliance with Loan Documents:**

Borrower represents that, except for the payments described in this Agreement, Borrower is in full compliance with the covenants in the Loan Documents and that all of the representations and warranties contained in the Loan Documents are true, correct or satisfied as of the effective date of this Agreement.

### 10. **Renewal and Extension:**

It is the intention of the parties that all liens and security interests described in the Loan Documents are hereby renewed and extended until the Modified Principal Balance and other obligations to Lender, have been fully paid. Borrower and Lender acknowledge and agree that the extension, amendment, modification or rearrangement effected by this Agreement shall in no manner affect or impair the Note or the liens and security interests securing the Note. The parties mutually agree that the purposes of this Agreement is to extend, modify, amend or rearrange the time and manner of payment of the Loan Documents and the indebtedness evidenced thereby, and to carry forward all liens and security interests (including, if applicable, any and all vendor's liens), which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect to fully secure the payment of the Note.

### 11. **No Waiver of Lender's Rights Regarding Default:**

All the rights, remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents also shall apply

Page 5 of the Loan Modification Agreement
Order Number:
MERS MIN:

Borrower Initial Lines
*Please add the appropriate number of initial lines for each
signatory over 4
MERS Phone

MOLMP R 277 E 27 / S 1 of 2

to default in the making of the modified payments hereunder. Nothing contained herein shall be deemed to be a waiver by Lender of any terms or conditions of the Loan Documents as modified by this Agreement. This Agreement shall in no way be deemed to be a waiver of Lender's rights and remedies by reason of any default by Borrower under the Loan Documents as herein modified, including without limitation future payment defaults. Nothing in this Agreement shall constitute an agreement by Lender to any future modification of the Loan Documents and Lender expressly reserves the right to refuse to agree to any future modifications.

## 12. Bankruptcy:

If, since inception of this loan through date of this Agreement, Borrower has received a discharge in a Chapter 7 bankruptcy and there has been no valid reaffirmation of the underlying debt, the Lender is not attempting to re-establish any personal liability for the underlying debt by entering into this Agreement. The parties acknowledge that Lender retains certain rights, including but not limited to, the right to foreclose its interest in the property under appropriate circumstances. The parties agree that the consideration for this Agreement is the Lender's forbearance from presently exercising its right and pursuing its remedies under the Security Instrument as a result of Borrower's default. The parties agree that if approval of this Agreement by the Bankruptcy Court is required and not received, this Agreement shall be null and void and of no further force or effect.

## 13. Loan Documents Remain In Full Force and Effect:

The provisions of the Loan Documents, as amended by this Agreement, shall continue in full force and effect, and Borrower acknowledges and reaffirms Borrower's liability to Lender under the Loan Documents, subject to the terms of the Bankruptcy section of this Agreement. In the event of any inconsistency between this Agreement and the terms of the Loan Documents, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a novation, satisfaction or release, in whole or in part, of the Loan Documents. Except as otherwise specifically provided in this Agreement, the Loan Documents remain unchanged, and Borrower and Lender are bound and must comply with all of the terms and provisions of the Loan Documents, except as amended by this Agreement.

Borrower understands and agrees that MERS is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee of record under the Security Instrument and this Agreement. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026 tel. (888) 679-MERS. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower under the Loan Documents and this Agreement and is acting solely as nominee for Lender and Lender's successors and assigns and as such MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any

Page 6 of the Loan Modification Agreement
Order Number:
MERS MIN:

Borrower Initial Lines
*Please add the appropriate number of initial lines for each signatory over 4
MERS Phone

action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

## 14. Execution of Additional Documentation:

Borrower agrees to make and execute other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement, which if approved and accepted by Lender, shall be incorporated into this Agreement and shall bind and inure to Borrower's heirs, executors, administrators, and assigns.

## 15. Miscellaneous:

a. Lender does not, by execution of this Agreement, waive any rights it may have against any person not a party to the Agreement.

b. If any court of competent jurisdiction shall declare any provision of this Agreement to be invalid, to any extent, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect to bind the parties.

c. This Agreement may be executed simultaneously in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

d. This Agreement shall be governed by the laws of the state where the Property is located.

## 16. Effective Date:

This Agreement is effective upon the execution of this Agreement by Lender and Borrower.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS LOAN MODIFICATION AGREEMENT, TOGETHER WITH THE LOAN DOCUMENTS AND ANY EXHIBITS AND SCHEDULES THERETO, REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND CONTROL OVER ALL PRIOR NEGOTIATIONS, AGREEMENTS AND UNDERTAKINGS BETWEEN THE PARTIES WITH RESPECT TO SUCH MATTER. ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN AGREEMENT MAY BE LEGALLY ENFORCED. THIS LOAN MODIFICATION AGREEMENT MAY BE AMENDED OR CHANGED ONLY BY A WRITTEN INSTRUMENT EXECUTED BY THE PARTIES OR THEIR AUTHORIZED ASSIGNEES.**

Page 7 of the Loan Modification Agreement
Order Number:
MERS MIN:

Borrower Initial Lines
*Please add the appropriate number of initial lines for each signatory over 4
MERS Phone

MDLMP R 277 E 277 S 1 st2

**BORROWER**

CORY LEWIS

TOMOYO KIRNON

Acknowledgement

STATE OF Pennsylvania )
) SS:
COUNTY OF **MONTGOMERY** )

On the 19th day of January , 20 22 before me, the undersigned, a notary public in and for said state, personally appeared **CORY LEWIS & TOMOYO KIRNON**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

Notary Public

Donna Rojas
Printed name of notary

County of Residence: Philadelphia

Commission Number: 1281226

My Commission Expires: 1/16/2026

Commonwealth of Pennsylvania - Notary Seal
DONNA ROJAS - Notary Public
Philadelphia County
My Commission Expires January 16, 2026
Commission Number 1281226

Page 8 of the Loan Modification Agreement
Order Number:
MERS MIN:

MERS Phone

MDLMP R 272 C 27 / S 1 of 2

LENDER

**MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118**

Vice President, MidFirst Bank

Ashleigh Johnson

Printed Name

Acknowledgement

STATE OF OKLAHOMA          )
                           ) SS:
COUNTY OF OKLAHOMA         )

On the **31** day of **Jan**, 20**22**, before me, the undersigned, a notary public in and for said state, personally appeared **Ashleigh Johnson**, who acknowledged himself/herself/themselves to be a Vice President of MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118, and who is personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity as Vice President of MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118, and that by his/her/their signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

Notary Public

County of Residence: **CLEVELAND**

**Felicia Stotts**
Printed Name of Notary

My Commission Expires: **JUL 3 0 2025**

FELICIA
NOTARY
# 21010011
EXP. 07/30/25
STATE
PUBLIC
OF OKLAHOMA

Page 9 of the Loan Modification Agreement
Order Number:
MERS MIN:

MERS Phone

MOLNP R 272 1 217 / 5 1 of 2

NOMINEE FOR LENDER
Mortgage Electronic Registration Systems, Inc.

Vice President
Mortgage Electronic Registration Systems, Inc.

____**Blake Hendley**____

Printed Name

STATE OF Oklahoma          )
                           ) §:
COUNTY OF Oklahoma         )

On the __31__ day of __Jan__, 20 **22** before me, the undersigned, a notary public in and for said state, personally appeared **Blake Hendley** ,. who acknowledged himself/herself/themselves to be a Vice President of Mortgage Electronic Registration Systems Inc. and who is personally known to me or who proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity as Vice President of Mortgage Electronic Registration Systems Inc. and that by his/her/their signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

Notary Public

**Felicia Stotts**
Printed name of notary

County of Residence: ____**CLEVELAND**____

My Commission Expires: ____JUL 3 0 2025____

FELICIA STOTTS
NOTARY
# 21010011
EXP. 07/30/25
PUBLIC
OF OKLAHOMA

Page 10 of the Loan Modification Agreement
Order Number:
MERS MIN:

MERS Phone

MDLMP-8.277.C.277.5.1 of 2

## Exhibit "A"

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.

SITUATE IN THE TOWNSHIP OF CHELTENHAM, COUNTY OF MONTGOMERY, COMMONWEALTH OF PENNSYLVANIA AND DESCRIBED ACCORDING TO A PLAN THEREOF MADE BY ALBRIGHT AND MEBUS ON THE 4TH DAY OF FEBRUARY A.D., 1929, AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF GREENWOOD AVENUE AS LAID OUT 36 FEET 6 INCHES WIDE, AT THE DISTANCE OF 20 FEET NORTHWARD FROM THE CENTER LINE OF THE SAID GREENWOOD AVENUE AS ORIGINALLY LAID OUT 33 FEET WIDE, MEASURED ON A LINE AT RIGHT ANGLES THERETO WHICH POINT IN (HE CENTER LINE OF THE SAID GREENWOOD AVENUE IS AT THE DISTANCE OF 792.97 FEET EASTWARD FROM THE EASTERLY SIDE OF LIMEKILN TURNPIKE AS LAID OUT 50 FEET WIDE; THENCE EXTENDING EASTWARDLY ALONG THE SAID NORTHERLY SIDE OF GREENWOOD AVENUE 100 FEET (O A POINT; THENCE EXTENDING NORTHWARDLY ON A LINE AT LIGHT ANGLES TO THE SAID GREENWOOD AVENUE 100 FEET TO A POINT; THENCE EXTENDING WESTWARDLY ON A LINE PARALLEL WITH THE SAID GREENWOOD AVENUE 100 FEET TO A POINT; AND THENCE EXTENDING SOUTHWARDLY ON A LINE AT RIGHT ANGLES TO THE SAID GREENWOOD AVENUE 100 FEET TO THE FIRST MENTIONED POINT AND PLACE OF BEGINNING.

**Parcel #**

**Tax ID#**

Page 11 of the Loan Modification Agreement
Order Number:
MERS MIN:                                                                    MERS Phone

MIDMP R 272 F 202 S 1 of 2



A division of MidFirst Bank

**CERTIFICATE OF RESIDENCE**

<u>**MORTGAGE MODIFICATION AGREEMENT**</u>
**TITLE OF DOCUMENT**

BETWEEN:

<u>**CORY LEWIS & TOMOYO KIRNON**</u>
*(ASSIGNOR/MORTGAGOR/GRANTOR)*

**AND**

<u>**MIDFIRST BANK**</u>
*(ASSIGNEE/MORTGAGEE/GRANTEE)*

*The precise address of the within ASSIGNOR/MORTGAGOR/GRANTOR is:*

**1211 GREENWOOD AVE  WYNCOTE, PA  19095-0000**

BORROWER

_____ (SEAL)   _____
CORY LEWIS                        DATE

_____ (SEAL)   _____
TOMOYO KIRNON                     DATE

Loan ID: ████

 

**MTG BK 14685 PG 00682 to 00702**
INSTRUMENT # : 2019030553
RECORDED DATE: 05/17/2019 10:01:45 AM



RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| **OFFICIAL RECORDING COVER PAGE** | Page 1 of 21 |
|---|---|

| | |
|---|---|
| **Document Type:** Mortgage | **Transaction #:** |
| **Document Date:** 04/30/2019 | **Document Page Count:** |
| **Reference Info:** | **Operator Id:** |
| **RETURN TO:** (Simplifile) | **PAID BY:** |
| 2200 Closing Services LLC | 2200 CLOSING SERVICES LLC |
| 2200 Walnut Street | |
| Philadelphia, PA 19103 | |
| (267) 303-8768 | |

**\* PROPERTY DATA:**
Parcel ID #:
Address:          1211 GREENWOOD AVE

                  WYNCOTE  PA
                  19095
Municipality:     Cheltenham Township (100%)
School District:  Cheltenham
**\* ASSOCIATED DOCUMENT(S):**

| **FEES / TAXES:** | | MTG BK 14685 PG 00682 to 00702 |
|---|---|---|
| Recording Fee:Mortgage | $86.75 | Recorded Date: 05/17/2019 10:01:45 AM |
| Additional Pages Fee | $32.00 | |
| Affordable Housing Pages | $32.00 | I hereby CERTIFY that this document is |
| | | recorded in the Recorder of Deeds Office in |
| **Total:** | $150.75 | Montgomery County, Pennsylvania. |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

This Instrument Prepared By:

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
                        CHELTENHAM TOWNSHIP
1211 GREENWOOD AVE
WALLS JUSTIN & TANYA                        $15.00
B 156 L  U 012 1101 05/17/2019             HW

After Recording Return To:
NATION ONE MORTGAGE CORPORATION
701 ROUTE 73 NORTH, SUITE 2
MARLTON, NEW JERSEY 08053
Loan Number:

Uniform Parcel Identifier Number:
31-00-12622001
Property Address:
1211 GREENWOOD AVE
WYNCOTE, PENNSYLVANIA 19095

———————————————— [Space Above This Line For Recording Data] ————————————————

FHA Case No:

# **MORTGAGE**

**MIN:**                                          **MERS Phone:**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 27. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated    APRIL 30, 2019    ,
together with all Riders to this document.
**(B)** **"Borrower"** is    CORY LEWIS, Tomoyo Kirnon

Borrower is the mortgagor under this Security Instrument.

PENNSYLVANIA FHA MORTGAGE - MERS

DocMagic *eForms*

Page 1 of 19

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. MERS telephone number is (888) 679-MERS.

**(D)** **"Lender"** is NATION ONE MORTGAGE CORPORATION .

Lender is a   NEW JERSEY CORPORATION                                                    organized
and existing under the laws of   NEW JERSEY                                              .
Lender's address is   701 ROUTE 73 NORTH, SUITE 2, MARLTON, NEW JERSEY 08053            .

**(E)** **"Note"** means the promissory note signed by Borrower and dated        APRIL 30           ,
2019          . The Note states that Borrower owes Lender        THREE HUNDRED FOURTEEN
THOUSAND TWO HUNDRED FOUR AND 00/100                                                    Dollars
(U.S. $  314,204.00                   ) plus interest. Borrower has promised to pay this debt in
regular Periodic Payments and to pay the debt in full not later than        MAY 1, 2049           .
**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Planned Unit Development Rider
☐ Condominium Rider            ☐ Other(s) [specify]

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-

of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

| COUNTY | of | MONTGOMERY | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE ATTACHED LEGAL DESCRIPTION
A.P.N.:

which currently has the address of

1211 GREENWOOD AVE
[Street]

WYNCOTE          , Pennsylvania          19095          ("Property Address"):
[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms,

as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower

shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items for any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

DocMagic *Remms*

**7.    Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.    Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows,

*DocMagic eForms*

drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co- signer's consent.

05/17/2019 10:45:28-10629-mdc   Doc 27-1   Filed 05/23/23   Entered 05/23/23 11:50:43   Desc   MONTCO
Exhibit - Proof of Claim   Page 47 of 57

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

PENNSYLVANIA FHA MORTGAGE - MERS

_DocMagic_ _eForms_

Page 12 of 19

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure

on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which,

due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note. "Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e)    the entry of any judgment against Borrower under the Note; and
(f)    the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CORY LEWIS                        -Borrower

_____ (Seal)
Tomoyo Kirnon                     -Borrower

_____
Witness

_____
Witness

——————————————— [Space Below This Line For Acknowledgment] ———————————

State of ____PENNSYLVANIA____

County of __Philadelphia__

On this the __30__ day of __April__ __2019__, before me, __Julie K Hiestand__

the undersigned officer, personally appeared ___CORY LEWIS AND Tomoyo Kirnon___

known to me (or satisfactorily proven) to be the person whose name __is__

subscribed to the within instrument and acknowledged that __he__

executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

Commonwealth of Pennsylvania - Notary Seal
JULIE R. HIESTAND, Notary Public
Philadelphia County
My Commission Expires June 27, 2022
Commission Number 1225110

_____
Title of Officer

(Seal)
Loan Originator: Edward Leland Schmidt, NMLSR ID ▮▮▮▮ Loan
Originator Organization: NATION ONE MORTGAGE CORPORATION, NMLSR ID

PENNSYLVANIA FHA MORTGAGE - MERS

Page 18 of 19

DocMagic *eFarmss*
www.docmagic.com

### Certificate of Residence of Mortgagee

The undersigned hereby certifies that: (i) he/she is the Mortgagee or the duly authorized attorney or agent of the Mortgagee named in the within instrument; and (ii) Mortgagee's precise residence is:   1901 E Voorhees Street, Suite C, Danville, IL 61834

Witness my hand this _____ day of _____

Signature of Mortgagee or
Mortgagee's Duly Authorized Attorney or Agent

Type or Print Name of Mortgagee or
Mortgagee's Duly Authorized Attorney or Agent

PENNSYLVANIA FHA MORTGAGE - MERS

DocMagic *eForms*
www.docmagic.com

# Exhibit A

UNOFFICIAL COPY
MTG 14685 00680

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the Township of Cheltenham, County of Montgomery, Commonwealth of Pennsylvania and described according to a Plan thereof made by Albright and Mebus on the 4th day of February A.D., 1929, as follows:

BEGINNING at a point on the Northerly side of Greenwood Avenue as laid out 36 feet 6 inches wide, at the distance of 20 feet Northward from the center line of the said Greenwood Avenue as originally laid out 33 feet wide, measured on a line at right angles thereto which point in the center line of the said Greenwood Avenue is at the distance of 792.97 feet Eastward from the Easterly side of Limekiln Turnpike as laid out 50 feet wide; thence extending Eastwardly along the said Northerly side of Greenwood Avenue 100 feet to a point; thence extending Northwardly on a line at right angles to the said Greenwood Avenue 100 feet to a point; thence extending Westwardly on a line parallel with the said Greenwood Avenue 100 feet to a point; and thence extending Southwardly on a line at right angles to the said Greenwood Avenue 100 feet to the first mentioned point and place of beginning.

Being the same premises which Timothy Walsh also known as Timothy J. Walsh and Jeannine Walsh by Deed dated 5/14/2004 and recorded 6/22/2004 in Montgomery County in Deed Book 5513 Page 17 conveyed unto Justin Walls and Tanya Walls, in fee.

Prepared By:
**Dave LaRose/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
MidFirst Bank
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NATION ONE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all liens, and any rights due or to become due thereon to **MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION, WHOSE ADDRESS IS 999 NW GRAND BOULEVARD, SUITE 100, OKLAHOMA CITY, OK 73118 (800)654-4566, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 04/30/2019, in the amount of $314,204.00 made by **CORY LEWIS AND TOMOYO KIRNON** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR NATION ONE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS** recorded on 05/17/2019, in the Office of the Recorder of Deeds of **MONTGOMERY** County, in the State of **Pennsylvania**, in **Book 14685 and Page 00682**.

Modification: 04/05/2022 BK: 15559 PG: 00392.

Property is more commonly known as: 1211 GREENWOOD AVE CHELTENHAM TOWNSHIP, WYNCOTE, PA 19095.

**Dated this 14th day of March in the year 2023**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NATION ONE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**

By: _____

**SUSAN HICKS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

MMFDA 437462610  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
MERS PHONE            MERS Mailing Addresses: 11819 Miami St., Suite 100,



STATE OF FLORIDA    COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 14th day of March in the year 2023, by Susan Hicks as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NATION ONE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**VICKY MCCOY**

**COMM EXPIRES: 12/18/2026**

Assignment of Mortgage from:

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NATION ONE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)**

to:

**MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION, WHOSE ADDRESS IS 999 NW GRAND BOULEVARD, SUITE 100, OKLAHOMA CITY, OK 73118 (800)654-4566, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **CORY LEWIS AND TOMOYO KIRNON**

All that certain lot or piece of ground situated in
Mortgage Premises: 1211 GREENWOOD AVE CHELTENHAM TOWNSHIP
WYNCOTE, PA 19095
MONTGOMERY
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

**Certificate of Residence**

I, **Susan Hicks**, do certify that the precise address of the within named Assignee is:
**MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION, WHOSE ADDRESS IS 999 NW GRAND BOULEVARD, SUITE 100, OKLAHOMA CITY, OK 73118 (800)654-4566, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

**SUSAN HICKS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)